UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD WEIGLEIN,

                    Plaintiff,

        -vs-                                11-CV-809(RJA)(HKS)

NATIONAL GRID and NIAGARA MOHAWK
POWER CORPORATION,

                      Defendants.

---

APPEARANCES:      COLLINS & COLLINS, LLC (JOHN F. COLLINS, ESQ., OF COUNSEL), Buffalo, New York, Attorneys for Plaintiff.

                            BOND, SCHOENECK & KING, LLP (ROBERT A. LaBERGE, ESQ, OF COUNSEL), Syracuse, New York, Attorneys for Defendant.

## INTRODUCTION

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. # 7. Pending for determination is defendant's motion for summary judgment. Dkt.# 15. At oral argument, plaintiff's counsel acknowledged that plaintiff intended to abandon the second, third, and fourth causes of action asserted in his complaint. Accordingly, the only remaining claim is plaintiff's cause of action for the failure to provide reasonable accommodations as required by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). For the reasons that follow, it is recommended that defendant's motion be granted.

# BACKGROUND[1]

Plaintiff commenced his employment with defendant National Grid on November 6, 1989. He started as a janitor and worked his way into a position as a Cable Splicer. At all times, he was a member of the union and the terms of his employment were governed by a collective bargaining agreement between the defendant and Local 97 of the International Brotherhood of Electrical Workers. Dkt. # 15-2, ¶ 5.

As a Cable Splicer, plaintiff was responsible for installing and maintaining the electric lines and cables of defendant's underground electric system. Dkt. # 15-2, ¶ 8. The core requirement and responsibility of all represented employees in the position of Cable Splicer is to enter manholes and work in and around energized electric lines and cables. *Id.*

In his complaint, plaintiff alleged that, during the course of his duties on November 22, 2006, "he was moving an energized cable which subsequently exploded causing the plaintiff, serious permanent physical and psychological injuries." Dkt. #1, Exhibit A, ¶ 4. Plaintiff did not miss any work as a result of this event, however, until March 27, 2008, when he began a medical absence from work. Dkt. # 15-3, ¶¶ 12, 27. His health care providers reported that plaintiff would be able to return to work by the end of June 2008. *Id.* However, in a letter dated July 23, 2008, plaintiff's therapist indicated that plaintiff suffered from Post Traumatic Stress Disorder ("PTSD") and should "permanently avoid return to working directly with high voltage cables." Dkt. # 15-2, Exh. B.

---

[1] The factual summary is adapted from the defendants' Local Rule 56 Statement (Dkt. # 15-1), portions of plaintiff's deposition (Dkt. # 15-3), affidavits in support of the motion (Dkt. ## 15-3, 15-4), plaintiff's response to the motion (Dkt. # 19), and exhibits attached thereto.

While he was on medical leave, plaintiff bid on a vacant position as a Distribution Inspector pursuant to the labor agreement. Plaintiff was not the senior bidder on the job and the position was awarded to another employee, in accordance with the terms of the labor agreement. Dkt. # 15-3, ¶¶ 18-19. In November 2008, after exhausting all sick pay and leave benefits and accrued, unused vacation and personal time, plaintiff was placed into defendant's disability retirement program. Dkt. # 15-3, ¶ 23.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in January 2009. In a determination dated March 16, 2011, the EEOC found probable cause to believe that plaintiff was denied a reasonable accommodation in violation of the ADA. Dkt. # 19, Exh. A. The EEOC sought to resolve the matter through conciliation, but defendant declined to participate. Thereafter, in May 2011, the EEOC issued a "right to sue" letter. Dkt. #19, Exh. B.

## DISCUSSION

1. **Summary Judgment Standard**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n.7 (S.D.N.Y. 2011). Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*,

746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 Fed. Appx. 387 (2d Cir. 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed . . . ." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011)). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The Second Circuit has also held that, when deciding whether summary judgment should be granted in an employment discrimination case, the court "must take additional considerations into account." *Desir v. City of New York*, 453 F. Appx. 30, 32 (2d Cir. 2011) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). As stated in *Gallo:*

> A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

*Gallo*, 22 F.3d at 1224. Nonetheless, summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."); *cf. D'Eredita v. ITT Corp.*, 370 Fed. Appx. 139 (2d Cir. 2010) (affirming grant of summary judgment in favor of employer based on plaintiff's failure to show he could perform job with or without reasonable accommodation).

In this case, the defendant contends that summary judgment should be granted and the complaint dismissed. It argues that plaintiff has failed to establish that he was disabled for purposes of the ADA, that he was "otherwise qualified" to perform the essential functions of his position, or that he was discharged from his position.

## 2. The ADA

The ADA prohibits discrimination against any "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Section 12112(b) lists certain acts

which "discriminate against a qualified individual on the basis of disability" in violation of § 12112(a), including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A plaintiff makes out a *prima facie* case of disability discrimination arising from a failure to accommodate by establishing each of the following four elements: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96–97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).

At the time of the events in question,[2] the term "disability" was defined in the ADA as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The NYSHRL defines "disability" somewhat more broadly as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions

---

[2] Because the events giving rise to plaintiff's ADA claim occurred prior to January 1, 2009 (the effective date of the ADA Amendments Act of 2008), the version of the statute in effect during the time period at issue applies. See *Wega v. Ctr. for Disability Rights, Inc.*, 395 F. Appx. 782, 784 n. 1. (2d Cir. 2010) ("[T]here is no indication that Congress intended the ADA Amendments to have retroactive effect."). Unless otherwise indicated, citations to the statutory provisions and regulations herein are to the versions in effect between March 2008 (the date of the commencement of plaintiff's medical leave of absence) and November 2008 (the date of plaintiff's placement in the disability retirement program).

6

which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques...." N.Y. Exec. Law § 292(21). Thus, "unlike the ADA, the NYSHRL does not impose the requirement that the impairment substantially limit the individual's normal activities." *Penberg v. HealthBridge Mgmt.*, 823 F.Supp.2d 166, 182 (E.D.N.Y. 2011) (internal quotes omitted). "Aside from the law's unique definition of 'disability,'" however, claims under the NYSHRL are analyzed the same as ADA claims. *Id.*

In evaluating whether an individual's impairment substantially limits a major life activity, courts consider "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2), quoted in *Weltz v. City of New York*, 2004 WL 1907309, at *5 (S.D.N.Y. August. 25, 2004); *see also Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998). Major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

In this case, plaintiff claims that as a result of anxiety and PTSD, he is unable to work in manholes in and around energized electric cables. Plaintiff has not explicitly stated so, but it would appear that he claims to be substantially limited in his ability to perform the major life activity of working.[3] As explained by the Second Circuit in *Giordano v. City of New York,* 274 F.3d 740 (2d Cir. 2001):

---

[3] In his attorney's affidavit, plaintiff also argued that his mental impairments interfered with his ability to sleep and concentrate (Dkt. # 19,¶ 15), but he offered no medical evidence of these symptoms or the extent to which these symptoms were disabling.

7

> In general, an impairment substantially limits a major life activity if it
> renders a person either (i) unable to perform a major life activity that the
> average person in the general population can perform; or (ii) significantly
> restricted as to the condition, manner or duration under which an
> individual can perform that activity in comparison to the average person in
> the general population. But where, as here, the activity is working, the
> EEOC regulations define "substantially limits" more precisely:
>
> (i) The term substantially limits means significantly restricted in the ability
> to perform either a class of jobs or a broad range of jobs in various
> classes as compared to the average person having comparable training,
> skills and abilities. The inability to perform a single, particular job does not
> constitute a substantial limitation in the major life activity of working.

*Giordano*, 274 F.3d at 747–48 (internal alterations, quotation marks and citations omitted).

In the instant case, plaintiff has failed to demonstrate that his PTSD precludes him from performing a "class of jobs or a broad range of jobs in various classes...." 29 C.F.R. § 1630.2(j)(3)(i). He has presented no evidence suggesting that he is limited in his ability to perform the essential functions of any job other than the Cable Splicer position, which requires working in manholes around energized electric cables. In fact, plaintiff relies on medical documentation in which his therapist and an independent medical examiner both suggested that plaintiff was able to work in an alternative or transitional setting that does not present life-threatening dangers. Dkt. #19, Exhs. D, E. Thus, no rational jury could conclude that plaintiff's condition prevented him from working in either a class of jobs or a broad range of jobs. *See, e.g., Muller v. Costello*, 187 F.3d 298, 313 (2d Cir. 1999) (plaintiff was not substantially limited in major life activity of working where he "presented no evidence that he was precluded from jobs other than correctional officer in his geographic area"); *Colwell*, 158 F.3d at 644 (plaintiff not substantially limited in major life activity of working because "impairment

disqualif[ied] him 'from only a narrow range of jobs' (those involving physical confrontation)") (alteration in original); *Weigand v. Niagara Frontier Transp. Auth.*, 2010 WL 584021 (W.D.N.Y. February 16, 2010) (plaintiff not disabled under the ADA where he presented no evidence suggesting that he was limited in his ability to perform the essential functions of any job other than his particular, pre-injury position, which required lifting bus components in excess of a 50–pound lifting restriction); *Petrunti v. Cablevision*, 2009 WL 5214495, *8 (E.D.N.Y. December 30, 2009) (finding plaintiff was not substantially limited in major life activity of working where her claimed disability disqualified her only from jobs requiring use of headphones); *Curry v. Federal Express Corp.*, 2006 WL 839426, *9 (W.D.N.Y. March 28, 2006) (holding no reasonable jury could find plaintiff's lifting restriction rendered her disabled within the meaning of the ADA). In sum, plaintiff's inability to perform all the essential functions of the Cable Splicer position does not render him disabled within the meaning of the ADA.

In response to the motion, plaintiff argues that he has satisfied the elements of his *prima facie* case by virtue of the EEOC finding of probable cause. In its determination of March 16, 2011, the EEOC found that defendant did not consider plaintiff for any other positions that would have allowed him to avoid working around high voltage cables. Accordingly, the EEOC found sufficient evidence of probable cause to indicate that the plaintiff was denied a reasonable accommodation. Dkt. # 19, Exh. A.

Findings of discrimination by the EEOC are not sufficient evidence, *per se*, to avoid summary judgment. *Wanamaker v. Columbian Rope Co.*, 907 F.Supp. 522, 538 n. 24 (N.D.N.Y. 1995), *aff'd,* 108 F.3d 462 (2d Cir. 1997). The admissibility of an EEOC reasonable cause determination is discretionary with the district court and is dependent

upon probative facts and a proper legal basis for an administrative finding. *Id., see also Miller v. Saint-Gobain Advanced Ceramics Corp*., 2004 WL 941798 *3 n. 8 (W.D.N.Y. Apr. 9, 2004) ("[d]istrict courts have substantial discretion with respect to the weight to be accorded an EEOC determination.").

In this case, the EEOC, in its probable cause determination, summarized the relevant facts of this dispute. While the EEOC found that defendant failed to offer the plaintiff an alternative position, such an accommodation is not required for an individual who falls outside the protections of the ADA. The EEOC determination lacks any legal analysis of the statute or the elements of the plaintiff's *prima facie* case under the ADA. Thus, the EEOC determination of probable cause in this case should be given no consideration and certainly is no substitute for a properly presented *prima facie* case on a motion for summary judgment. *See Wanamaker,* 907 F.Supp. at 538 n. 24 (EEOC determination given no weight as it contained no legal analysis which, in any event, is the province of the court); *Miller,* 2004 WL 941798, *3 n. 8 (EEOC determination accorded no weight as it was "sparse and conclusory" and was unclear as to the scope of the investigation).

Plaintiff has failed to demonstrate that his anxiety and PTSD substantially limits his ability to work within the meaning of the ADA. Plaintiff's impairment, at most, precludes him from performing a "single, particular job." 29 C.F.R. § 1630.2(j)(3)(i). Accordingly, plaintiff has not established that he has a disability within the meaning of the ADA, and his federal ADA claim should be dismissed.[4]

---

[4] Plaintiff's failure to establish that he was "disabled" under federal law does not foreclose his claim under the NYSHRL. *See Reeves v. Johnson Controls World Servs.,* 140 F.3d 144, 155 (2d Cir. 1998)(an individual can be disabled under the NYSHRL if his impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit the individual's normal activities).

Should the District Court agree with this analysis and dispose of plaintiff's single federal claim, it would be appropriate to decline to exercise supplemental jurisdiction over plaintiff's state law claim under the NYSHRL. *See* 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that courts ordinarily should decline to exercise supplemental jurisdiction in the absence of federal claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

The Second Circuit shares this view. Where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ( "In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989) ("in light of proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over Powell's state-law claims against the County").

Accordingly, it is recommended that the District Court decline to exercise supplemental jurisdiction over plaintiff's state law claim and instead dismiss the

NYSHRL claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3). *See Mayer v. Oil Field Sys. Corp.*, 620 F.Supp. 76, 77–78 (S.D.N.Y.1985) ("The exercise of [supplemental] jurisdiction ... where the federal claims have been dismissed on summary judgment before trial would be inappropriate absent exceptional circumstances. Since [N.Y. C.P.L.R. § 205(a) ] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations, [the plaintiff] will not be unduly prejudiced by the dismissal of her state law claims."). As the Second Circuit has expressly noted: "We think that in the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by the New York state and municipal law is a question best left to the courts of the State of New York ...." *Giordano,* 274 F.3d at 754.[5]

Alternatively, defendant contends that plaintiff has failed to establish the third prong of his *prima facie* case - that with a reasonable accommodation he was able to perform the essential functions of the job at issue. "[T]he plaintiff bears the burden of production and persuasion on the issue of whether she is otherwise qualified for the job in question." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137 (2d Cir.1995).[6] Since "[a] plaintiff cannot be considered 'otherwise qualified' unless she is able, with or without assistance, to perform the essential functions of the job in question[,] ... [i]t follows that the plaintiff bears the burden of proving either that she can meet the

---

[5] While defendant did not urge jurisdictional considerations as a basis for dismissing the state law claim, this court has an obligation to consider, *sua sponte*, its exercise of supplemental jurisdiction.

[6] Although *Borkowski* was decided in the context of a Rehabilitation Act case, the allocation of burdens enunciated in *Borkowski* also apply in an ADA case. *See Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 370 (2d Cir. 2008).

requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions." *Id.* at 137–38 (internal citation omitted); *see also Jackan v. N.Y. State Dep't of Labor,* 205 F.3d 562, 566-67 (2d Cir. 2000) (plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to perform the essential functions of his employment, including the existence of a vacant position for which he is qualified).

"[T]he 'otherwise qualified' inquiry asks whether the plaintiff will be able to do the job." *Messer v. Bd. of Educ. of City of New York*, 2007 WL 136027, at *11 (E.D.N.Y. January 16, 2007) (citing *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)). "Essential functions are defined under [EEOC] regulations to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal." *Shannon,* 332 F.3d at 100 (internal quotations and citations omitted). "In approaching this inquiry, '[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.' " *Id.* (quoting *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998).

The record reflects that the core requirement and responsibility of all represented employees in the position of Cable Splicer is to enter manholes and work in and around energized electric lines and cables. Dkt. # 15-2, ¶ 8. While plaintiff argues that he could have been accommodated by being allowed to act as a "Manhole Attendant," there is no job title or position of "Manhole Attendant." Dkt. # 20-2, ¶ 5. The term merely describes one function performed by Cable Splicers in defendant's Underground Lines Department. *Id.,* ¶ 6. Ronald Cotton, defendant's Labor Relations Manager, stated that "all Cable Splicers in the Underground Line Department are required to enter manholes

on a regular basis to perform essential functions of the Cable Splicer job, which include working in and around energized electric lines and cables." *Id.* Plaintiff has offered no evidence to refute the defendant's position regarding the essential functions of the Cable Splicer job.

"After the essential functions of the position are determined, the plaintiff must demonstrate that he or she could have performed these functions, with or without reasonable accommodation, at the time of the termination or discipline." *McMillan v. City of New York,* 711 F.3d 120, 127 (2d Cir. 2013). Reasonable accommodations may include adjustments to work schedules or other job restructuring, but "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Id.* (quoting *Shannon,* 332 F.3d at 100). Likewise, the ADA does not require an employer to create a new position for a disabled employee. *See Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 187 (2d Cir. 2006).

In this case, because plaintiff was unable to enter manholes and work around energized electric cables, he has failed to establish that he was otherwise qualified to perform the essential functions of the position of Cable Splicer. *See, e.g., Palmieri v. City of Hartford,* 2013 WL 2398365, *13-14 (D.Conn. May 31, 2013) (plaintiff who could not lift more than seven pounds, could do only sedentary work, and who could not carry a weapon was not qualified to perform the essential functions of the position of patrol officer). Likewise, plaintiff has presented no evidence that there existed any potential accommodation that would have allowed him to continue to work as a Cable Splicer, regardless of the form such an accommodation would have taken.

The only accommodation plaintiff allegedly sought was reassignment to a different position. Plaintiff argues that defendant was required to place him in any number of other jobs that did not require working in manholes around energized cables, however, he has failed to specifically identify a suitable and available position to which he could have been reassigned.

> An ADA plaintiff does not satisfy his burden to identify a potential accommodation merely by reciting the formula that his employer could have reassigned [him]. Instead, [he] must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which [he] could have been reassigned.

*McBride,* 583 F.3d at 97-98 (citing *Jackan,* 205 F.3d at 566-67; *see also Shannon*, 332 F.3d at 104 ("[T]he position sought must be vacant within a reasonable amount of time."); *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 99 (2d Cir.1999) (the identified position must be one for which the employee was qualified). Plaintiff has acknowledged that job vacancies in the bargaining unit are filled pursuant to the post and bid procedure. Plaintiff bid on only one position after the start of his medical leave and was not awarded the position as he was not the senior candidate. He has offered no evidence of specific job vacancies for which he was qualified, but has presented only hypothetical jobs that exist in defendant's various departments. Plaintiff's conclusory assertions that defendant should have reassigned him to another position are insufficient to establish the existence of an available and appropriate position as a reasonable accommodation.

In sum, plaintiff has failed to make a sufficient showing that he is capable of performing the essential functions of either his pre-disability Cable Splicer position or some other position to which he could have been reassigned. Accordingly, plaintiff has

failed to set forth a *prima facie* case under the ADA and the NYSHRL and his claims for failure to provide a reasonable accommodation should be dismissed.[7]

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (Dkt. #157) be GRANTED and the complaint dismissed.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

---

[7] As this court has determined that the motion can be disposed of on two alternate grounds, it is unnecessary to address defendant's argument that plaintiff's employment was not terminated and thus he did not suffer an adverse employment action.

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

**SO ORDERED.**

DATED:   Buffalo, New York
         August 15, 2013

                                       s/ H. Kenneth Schroeder, Jr.
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**